Stephanie ALFORD and Pamela
Hardge Williams, Plaintiffs,

v.

COSMYL, INC., Defendant.

No. 4:00–CV–122–2(CDL).

United States District Court,
M.D. Georgia,
Columbus Division.

Feb. 20, 2002.

Gwyn Newsom Bunn, Columbus, GA, for plaintiffs.

Forrest Walker Hunter, Emily Sturdivant Sanford, Alston & Bird, Atlanta, GA, Amelia M. Bever, Stephen X. Munger, Atlanta, GA, W. Donald Morgan, Jr., Columbus, GA, Richard D. Tuschman, Neil F. McGuinness, Miami, FL, for defendant.

## ORDER

LAND, District Judge.

This case arises from Defendant's termination of Plaintiffs' employment on March 5, 1999. Plaintiffs' Complaint contains six counts. Count I alleges race discrimination, sex discrimination, and retaliation under Title VII of the Civil Rights Act of

1964. Count II alleges race discrimination under 42 U.S.C. § 1981. Count III alleges a violation of the Equal Pay Act. Counts IV, V and VI allege state law claims for negligent retention and supervision of supervisory employees, intentional infliction of emotional distress, and punitive damages.

Plaintiffs have filed a motion to dismiss their claim for intentional infliction of emotional distress (Count V). Defendant does not object to the dismissal of this claim. Plaintiffs' motion to dismiss their intentional infliction of emotional distress claim is granted and that claim is hereby dismissed with prejudice.

Defendant has filed a motion for summary judgment on Plaintiffs' remaining claims, contending that no genuine issue of material fact exists to be tried, and that it is entitled to judgment as a matter of law. Plaintiffs have filed a response to Defendant's motion, and a hearing was held on Defendant's motion on February 5, 2002. For the reasons set forth below, Defendant's motion for summary judgment is granted in part and denied in part. Summary judgment is granted in favor of Defendant on Plaintiffs' Title VII sex discrimination discharge claim and on Plaintiffs' state law claims for negligent retention and supervision. Insofar as Plaintiffs' state law punitive damages claim is based upon Plaintiffs' state law claims, which have now been dismissed, summary judgment is granted in favor of Defendant on that punitive damages claim also. Defendant's motion for summary judgment is denied as to Plaintiffs' Title VII race discrimination discharge claim, Plaintiffs' Title VII retaliation claim, Plaintiff's § 1981 race discrimination claim, and Plaintiffs' Equal Pay Act claim.

## BACKGROUND

Defendant is a manufacturer of cosmetic beauty products, including gels, lotions, scrubs, and bubble bath. Defendant is owned by the Dalmau family. Jordi Dalmau, a Hispanic male, is president of the company. Defendant has a manufacturing plant in Columbus, Georgia. Its vice president of operations is David Colquhoun, a white male.

Plaintiffs are African–American females who were formerly employed in Defendant's production department. Plaintiff Williams began working for Defendant as a filling line worker in 1995. Plaintiff Alford began working for Defendant in quality control in 1996. Plaintiffs started off making $5.00 per hour. They received periodic raises, and in September 1998, they were earning $8.00 per hour as first shift crew leaders. As crew leaders, they had supervisory roles and assisted production manager Willie Flowers in supervising all production line workers and set-up mechanics. Throughout their employment, neither Plaintiff had received any verbal or written discipline regarding work performance with the exception of one tardiness warning that Williams received in 1996. Plaintiffs routinely received merit pay raises.

In October 1998, production manager Flowers resigned from his employment with Defendant. Instead of replacing Flowers with a production manager, Defendant promoted Plaintiffs to assume Flowers's job duties of supervising first shift production employees. Plaintiffs were given a raise to $9.00 per hour. They received a bonus in December 1998.

Charlie Lopez, a Hispanic male who had been a first shift set-up mechanic, was also given supervisory responsibilities for first shift production employees when Flowers left. A dispute exists as to the nature of Lopez's new responsibilities compared to those of Plaintiffs. Plaintiffs contend that Defendant's management made it clear to them that they, along with Lopez, were to

be jointly responsible for first shift production. According to Plaintiffs' testimony, the job responsibilities of Plaintiffs and Lopez were supposed to be substantially the same.

In December 1998, Plaintiffs discovered that Lopez was earning $13.46 per hour compared to their $9.00 per hour. Defendant contends that Lopez's higher pay was justified because he had technical mechanical skills that Plaintiffs did not possess. Plaintiffs dispute that Lopez's job responsibilities required him to use any skills that were not possessed and used by Plaintiffs in the performance of their jobs. If anything, Plaintiffs contend that Lopez's job was less demanding than theirs.

In January 1999, Plaintiffs complained to Defendant's human resources director about the disparity between their pay and Lopez's pay, claiming that the pay difference was discriminatory on the basis of race and gender. Plaintiffs asked for a raise. Defendant's human resources director responded that Plaintiffs were doing "pretty good for out here" and had "maxed out already" in their pay rate.

*Events on Thursday, March 4, 1999*

On the afternoon of March 4, 1999, Plaintiffs claim that they complained a second time about race and sex discrimination and unequal pay, this time to their new supervisor, Herberth Posada. Meeting with him at a table in the employees break room, Plaintiffs claim they told Posada that it was not fair for Lopez to be paid more than them. Plaintiffs claim they also asked Posada if they were being paid less because they were black females and Lopez was a Hispanic male and spoke the same language (Spanish) as the owner, Jordi Dalmau, a Hispanic male. They also claim they asked Posada for a pay raise. According to Plaintiffs' testimony, Posada promised to talk to Jordi and Colquhoun about their complaints. Posada admits only that Plaintiffs asked him for a pay

raise. Colquhoun walked into the break room during Plaintiffs' conversation with Posada, stopping at their table and asking for change to buy a Coke. Plaintiffs claim that Colquhoun was present to overhear the last part of the conversation where they asked for a pay raise and Posada promised to talk to Jordi and Colquhoun. Colquhoun testified that he did not recall overhearing anything.

According to Plaintiffs, immediately after Posada promised to talk to Colquhoun and Jordi about their complaints, Posada followed Colquhoun out of the break room and into Colquhoun's office. Posada concedes that he may have told Colquhoun about Plaintiffs' pay raise request before they were fired. Defendant admitted to the EEOC that Posada told Colquhoun that Plaintiffs had requested a raise, but denied that Posada told Colquhoun about their discrimination complaint.

*Events on Friday, March 5, 1999*

Early on the morning of March 5, 1999, Colquhoun decided to fire Plaintiffs. Defendant contends the reason Plaintiffs were fired was because of poor work performance. Colquhoun held Plaintiffs, as production supervisors, responsible for failing to meet production goals between October 1998 and March 1999. Defendant contends Colquhoun was unaware that Plaintiffs had made complaints about discriminatory pay prior to his decision to fire them. Plaintiffs contend that they were not responsible for failing to meet any production goals and that Defendant's reason for firing them is pretextual, the real reason being their complaints about discriminatory pay.

When Plaintiff Alford learned she had been fired late Friday afternoon, she immediately called Posada and asked him why she and Williams had been fired. According to Alford, Posada made no mention of poor work performance and told

her, "I don't know, but Dave (Colquhoun) asked me yesterday how I liked working with you guys." Plaintiffs argue that Posada's response shows that he discussed Plaintiffs' situation with Colquhoun prior to Plaintiffs' discharge and after Plaintiffs had complained to Posada about discriminatory pay.

### Events on Monday, March 8, 1999

Since Defendant's front office was closed over the weekend, Plaintiffs had to wait until Monday to speak to Colquhoun and Defendant's human resources director about their terminations. Early Monday morning Plaintiffs met with Defendant's human resources director who allegedly told them she did not know why they had been fired. According to Plaintiffs' testimony, the human resources director told them that it was wrong to fire them and that there was nothing in their personnel files. She even offered to provide Plaintiffs with a good job reference.

Plaintiffs then spoke with Colquhoun who told them that they "didn't do what they were supposed to do," which Plaintiffs denied. Colquhoun also told them that "Jordi wanted to downsize." When they asked why Lopez had not been fired since he was also responsible for production, Colquhoun responded "Charlie didn't have anything to do with it. You need to go find a job with better pay and benefits." Plaintiffs contend that Colquhoun's statement about Lopez and "better pay and benefits" shows that Colquhoun was aware of Plaintiffs' complaints of discriminatory pay made to Posada.

Following Plaintiffs' terminations, Defendant assigned their duties to an African American female and a Hispanic female.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Fed. R.Civ.P.* 56(c); *see Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Allen v. Tyson Foods,* 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Allen,* 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party, and determine whether that evidence could reasonably sustain a jury verdict. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Allen,* 121 F.3d at 646.

### PLAINTIFFS' FEDERAL LAW CLAIMS

#### A. Race Discrimination Claim[1]

Plaintiffs contend that they were fired because of their race (African American). To avoid summary judgment, Plaintiffs must establish sufficient evidence from which a reasonable jury could find discriminatory intent on the part of Defendant. *See Harris v. Shelby County Bd. of Educ.,* 99 F.3d 1078, 1083 (11th Cir.1996). Plaintiffs may establish discriminatory intent through either direct, circumstantial, or

---

1. Plaintiffs assert a race discrimination claim under Title VII (Count I of their Complaint) and under 42 U.S.C. § 1981 (Count II). Claims under § 1981 are reviewed under the same standards as Title VII claims. *See Reyn-* olds v. CSX Transp., Inc., 115 F.3d 860 (11th Cir.1997). Therefore, the Court's analysis of Plaintiffs' Title VII and § 1981 race discrimination claim is identical.

statistical evidence. If Plaintiffs can produce direct evidence of discriminatory intent, then the burden shifts to Defendant to prove by a preponderance of the evidence "that the same employment decision would have been made in the absence of the discriminatory intent." *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1330 (11th Cir.1998). If Plaintiffs rely upon circumstantial evidence to prove discriminatory intent, then the Court evaluates Plaintiffs' claim using the familiar analytical framework announced by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Standard v. A.B.E.L. Servs., Inc.* 161 F.3d 1318, 1330 (11th Cir.1998). The only direct evidence of discriminatory intent in this case is a racist remark allegedly made by Colquhoun. For racist remarks to be considered direct evidence of discrimination, they must have been uttered by the decision maker in the challenged action, or, at the very least, by someone involved or having an influence on the decisional process. *See Holifield v. Reno,* 115 F.3d 1555, 1563–64 (11th Cir.1997).

Plaintiffs contend that Colquhoun, the primary decision maker, stated to Plaintiff Williams and her African American co-workers: "I don't care nothing about you niggers, you're not my family." Whether this racist comment is classified as "direct" or "circumstantial" evidence, it is certainly

evidence that the Court may consider in determining whether a reasonable jury could find discriminatory intent in this case.[2] Since the Court finds that Plaintiffs can satisfy their burden in overcoming Defendant's motion for summary judgment using circumstantial evidence under the familiar *McDonnell Douglas* framework, the Court need not decide whether Colquhoun's racist epithet standing *alone* as direct evidence is sufficient to prove discriminatory intent.

### 1. *The McDonnell Douglas Framework*

Under *McDonnell Douglas* and its progeny, the plaintiff in a discriminatory discharge case must first establish a *prima facie* case. After a *prima facie* case is presented, the defendant must articulate a legitimate and non-discriminatory reason for the discharge. The defendant's burden is one of production not persuasion. Once the defendant has produced a legitimate, non-discriminatory reason for the discharge, the burden shifts back to plaintiff to prove that the defendant's reason is pretextual. *See Holifield,* 115 F.3d at 1564; *Combs v. Plantation Patterns,* 106 F.3d 1519 (11th Cir.1997); *Texas Dept. Of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). A plaintiff may show pretext and survive summary judgment by demonstrating that a genuine issue of material fact exists as to the truth or falsity of the employer's proffered reasons. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502,

---

**2.** Defendant argues that the Court should not even consider this comment because Plaintiff Williams did not mention it in her deposition but included it in her affidavit opposing summary judgment. A review of Williams's deposition reveals that she was not directly questioned about racist comments made by Colquhoun. Instead, she was asked a general question that a lawyer may conclude was

attempting to elicit racist statements, but a lay person may not have understood the question to seek that information. The Court is satisfied that Williams's affidavit testimony is not directly in conflict with her deposition testimony and that she has adequately explained any discrepancy. Accordingly, the Court will consider the affidavit testimony in ruling on the summary judgment motion.

511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

### 2. Plaintiffs' Prima Facie Case of Race Discrimination

■ To prove a *prima facie case* in a discriminatory discharge case, Plaintiffs must prove: (1) that they are members of a protected class; (2) that they were qualified for the job from which they were discharged; (3) that they were in fact discharged; and (4) that their positions were filled by someone outside their protected class.[3] *See Holifield,* 115 F.3d at 1561–62; *see also Edwards v. Wallace Community College,* 49 F.3d 1517, 1521 (11th Cir.1995).

It is undisputed that Plaintiffs are members of a protected class and that they were discharged. The Court also finds that sufficient evidence exists from which a reasonable jury could conclude that Plaintiffs were qualified for the job from which they were discharged. Therefore, the only remaining issue is whether Plaintiffs were replaced with employees who were not within Plaintiffs' protected class and/or whether employees who were not in Plaintiffs' protected class were treated more favorably than Plaintiffs.

Defendant contends that Plaintiffs were replaced by a female African American and a female Hispanic. Therefore, according to Defendant, at least one of the Plaintiffs was replaced with someone within her protected class, an African American female. It is unclear at this stage of the proceedings, however, which of the Plaintiffs was replaced with an African American employee. Therefore, given Defendant's admission that one of the replacements was outside Plaintiffs' protected class (Hispanic) and the absence of conclusive evidence that either Plaintiff was replaced with a member of her own protected class (African American), the Court finds that a genuine issue of material fact exists as to the fourth element of Plaintiffs' *prima facie* case.[4] Accordingly, the Court rejects Defendant's contention that Plaintiffs have failed to make out a *prima facie* case as a matter of law.

### 3. Evidence of Pretext

■ Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiffs' terminations—"unsatisfactory job performance, as reflected by the consistently low production numbers during Plaintiffs' tenure." Therefore, the burden shifts back to Plaintiffs to prove that Defendant's reason for their discharge was pretextual. To avoid summary judgment, Plaintiffs must produce sufficient evidence that demonstrates "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns,* 106 F.3d at 1538.

Plaintiffs submit the following evidence of pretext. First, the decision maker in this case, Colquhoun, has demonstrated racial animus in the past with his alleged racist statement. As the Court previously

---

3. The 11th Circuit has also held that a plaintiff can establish a *prima facie* case by showing that she was fired while others not in the plaintiff's protected class, having comparable or lesser qualifications, were retained. *See Nix v. WLCY Radio/Rahall Comm.,* 738 F.2d 1181, 1185 (11th Cir.1984).

4. Plaintiffs also argue that the "replacements" only performed some of the duties performed by Plaintiffs and that the Hispanic female "replacement" was payed substantially more than Plaintiffs, which Plaintiffs contend is further evidence of discrimination. The Court notes, however, that at trial if Plaintiffs are unable to prove that they were replaced by persons outside of their protected class, they face the likelihood of suffering a defeat as a matter of law on their race discharge claim.

**1368**

indicated, this statement should be considered in determining whether sufficient evidence of discriminatory intent exists for this case to be submitted to a jury.

Second, Defendant's reasons for firing Plaintiffs have not been consistent. The reason given on their separation notices was "poor work performance," although the human resources director allegedly told Plaintiffs she did not know why they were fired. When Plaintiffs met with Colquhoun three days after being fired, they claim he told them they "didn't do what they were supposed to do." When Plaintiffs denied that, Colquhoun allegedly told them that the owner was "downsizing." During the discovery in this case, Defendant asserted another reason for the terminations, claiming that Plaintiffs were involved in a product dumping incident and its subsequent cover-up. Plaintiffs denied any involvement in this incident, and the employee that Defendant claims reported Plaintiffs' involvement has denied that Plaintiffs were involved.

Third, Defendant's witnesses have offered contradictory testimony regarding Plaintiffs' terminations. Defendant informed the Georgia Department of Labor during the unemployment compensation claims process that Plaintiffs had been warned repeatedly about their poor work performance, but all of Defendant's witnesses now deny giving either Plaintiff any verbal or written warnings before they were fired.

Fourth, Plaintiffs received no verbal or written discipline for work performance issues, particularly during the time period that Defendant claims performance steadily declined. During that same period, however, Plaintiffs did receive a bonus.

Fifth, Plaintiffs have submitted an affidavit from their previous supervisor, Flowers, who describes them as outstanding employees and supervisors. Plaintiffs argue that a reasonable jury could disbelieve Defendant's contention that Plaintiffs' work performance suddenly and inexplicably declined. Furthermore, they argue that it is implausible for two employees, who happen to be African American, to have the same exact decline in work performance at the exact same time. Moreover, Plaintiffs argue that Defendant's refusal to discipline Lopez, who was also responsible for production but was not African American, is additional circumstantial evidence of Defendant's discriminatory intent.

Sixth, subsequent to the terminations, Defendant provided a good reference for Plaintiff Williams, informing her subsequent employer that her job performance was satisfactory and that she was eligible for rehiring. A reasonable jury could conclude that Defendant's conduct contradicts its contention that Defendant was fired for poor work performance.

Seventh, the evidence is in dispute as to whether Plaintiffs' work performance contributed to the alleged decrease in production numbers. Plaintiffs denied that they were responsible. Defendant has generally maintained that production declined. However, Defendant's evidence is not undisputed.

The Court finds that Plaintiffs have produced sufficient evidence from which a reasonable jury could disbelieve Defendant's proffered reason for firing Plaintiffs. "Once a plaintiff has established a *prima facie* case and has put on sufficient evidence to allow a factfinder to disbelieve an employer's proffered explanation for its actions, that alone is enough to preclude entry of judgment as a matter of law." *Williams v. Vitro Services Corp.*, 144 F.3d 1438, 1441 (11th Cir.1998) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1532 (11th Cir.1997); *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S.

133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

Having found that Plaintiffs have produced sufficient evidence to make out a *prima facie* case on their race discrimination claim and that a reasonable jury could conclude that Defendant's stated reasons for firing Plaintiffs were pretextual, the Court finds that genuine issues of material fact exist to be tried. Accordingly, Defendant's motion for summary judgment as to Plaintiffs' Title VII race discrimination claim and Plaintiffs' 42 U.S.C. § 1981 claim is denied.

### B. *Sex Discrimination Claim*

■ Plaintiffs also contend that they were fired because they were female, and therefore, they assert a claim under Title VII for sex discrimination (Count I). The Court finds that Plaintiffs have produced insufficient evidence to make out a *prima facie* case on their gender discrimination discharge claim. Unlike their race discrimination claim, Plaintiffs have produced no evidence of gender animus similar to the racist comments made by Colquhoun. Furthermore, Plaintiffs have failed to produce any evidence to overcome Defendant's evidence that the persons who replaced Plaintiffs were both female. Accordingly, summary judgment is granted in favor of Defendant on Plaintiffs' gender discrimination discharge claim.

### C. *Retaliation Claim*[5]

■ To establish a *prima facie* case of retaliation, Plaintiffs must show that: (1) they engaged in a statutorily protected activity; (2) they suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action. *See Far-*

*ley v. Nationwide Mut. Ins.*, 197 F.3d 1322, 1336 (11th Cir.1999); *see also Wideman v. Wal-Mart Stores*, 141 F.3d 1453, 1454 (11th Cir.1998).

■ Plaintiffs clearly complained about not being paid adequately and further complained that they felt the disparity between their pay and Lopez's (a Hispanic male) pay was discriminatory. After their complaints were made, Plaintiffs were fired. Therefore, Plaintiffs engaged in a statutorily protected activity (complaining about discriminatory pay) and suffered an adverse employment action (termination of their employment). The remaining question is whether there was a causal connection between the protected activity and the termination.

To establish a causal connection between Plaintiffs' discriminatory pay complaints and their termination, Plaintiffs must produce sufficient evidence from which a reasonable jury could conclude that the two were not "wholly unrelated." *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 590 (11th Cir.2000). This necessarily requires some showing that the decision maker who made the termination decision had knowledge of the protected activity, the discriminatory pay complaints. "A decision maker cannot have been motivated to retaliate by something unknown to him." *Brungart v. BellSouth Telecommunications, Inc.* 231 F.3d 791, 799 (11th Cir.2000). Plaintiffs have the burden of demonstrating the decision maker's awareness. *See Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir.1997).

■ Plaintiffs argue that the fact that they were fired within 24 hours of their complaints is persuasive circumstantial evidence of Defendant's awareness of their

---

**5.** Plaintiffs assert a retaliation claim under Title VII, 42 U.S.C. § 1981, and the Equal Pay Act. Since the facts giving rise to Plain-

tiffs' retaliation claims are identical and the legal analysis is the same, the Court addresses Plaintiffs' retaliation "claims" collectively.

complaints. Although Plaintiffs need to produce more evidence than "mere curious timing coupled with speculative theories,"[6] temporal proximity between the protected activity and the adverse employment action is a significant factor that can be combined with other evidence to establish causation. *See Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993). The issue at the summary judgment stage is whether Plaintiffs have produced sufficient evidence from which a reasonable jury could conclude that the decision maker, Colquhoun, was aware of Plaintiffs' complaints about discriminatory pay, and that those complaints and Colquhoun's termination of Plaintiffs were not wholly unrelated. The timing of Plaintiffs' firing in relation to their complaints can be considered as evidence of retaliation, but standing alone, it is not dispositive of the issue.[7] This timing combined with evidence that Colquhoun was aware of the complaints, however, would be sufficient to overcome summary judgment.

Plaintiffs have produced evidence from which a reasonable jury could conclude that Colquhoun was aware of Plaintiffs' complaints of discriminatory pay. Plaintiffs contend that they made their complaints to their supervisor, Posada. When they were discussing the matter with Posada, Colquhoun allegedly entered the break room and was in close proximity to the conversation. In fact, Colquhoun, according to Plaintiffs, even asked them for change for the vending machine. Colquhoun therefore clearly had the opportunity to hear the discriminatory pay complaints. According to Plaintiffs, immediately after they aired their complaints to Posada, Po-

sada left the break room, followed Colquhoun down the hall to his office and entered Colquhoun's office. Plaintiffs were fired the next day allegedly for poor work performance despite never having been disciplined for poor work performance. When Plaintiffs questioned Colquhoun about their firing, Colquhoun gave vague and inconsistent reasons including an admittedly false claim that the owner was "downsizing." When they complained about Lopez not "doing anything," Colquhoun replied that Lopez "had nothing to do with it," and Plaintiffs needed to go find a "job with *better pay and benefits.*" One could infer that this response evidenced an awareness on Colquhoun's part that Plaintiffs had been complaining about being paid less than Lopez, particularly given the evidence that Posada met with Colquhoun shortly after hearing Plaintiffs' complaints and that Plaintiffs were fired shortly thereafter. Furthermore, when you combine this circumstantial evidence with Colquhoun's alleged racist comments, the Court finds that a reasonable jury could conclude that Plaintiffs' complaints about discriminatory pay and their termination were not wholly unrelated. Therefore, the Court rejects Defendant's contention that Plaintiffs have failed to make out a *prima facie* retaliation claim as a matter of law.

The Court further finds for the same reasons set forth in its analysis of Plaintiffs' race discrimination discharge claim that Plaintiffs have produced sufficient evidence from which a reasonable jury could conclude that Defendant's stated reasons for firing Plaintiffs were pretextual. Accordingly, Defendant's motion for sum-

---

**6.** *See Raney v. Vinson Guard Serv., Inc.,* 120 F.3d 1192, 1197 (11th Cir.1997).

**7.** *See Gupta,* 212 F.3d at 590, suggesting that under certain circumstances timing alone may be sufficient to establish the causal connection for a *prima facie* case. *But see Brun-*

*gart,* 231 F.3d at 799, explaining that for temporal proximity alone to be sufficient to establish the causal connection for a *prima facie* case, there must be unrebutted evidence that the decision maker had knowledge of the employee's protected conduct.

mary judgment on Plaintiffs' retaliation claim is denied.

### D. *Equal Pay Act Claim*[8]

 The Equal Pay Act prohibits employers from paying employees of one sex less than employees of another sex for equal work. *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792, 801 (11th Cir.1992). In order to establish a *prima facie* case for an Equal Pay Act ("EPA") violation, a plaintiff must show that her employer "pays different wages to employees of opposite sexes 'for equal work on jobs ... [requiring] equal skill, effort and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974) (quoting 29 U.S.C. § 206(d)(1)). The issue at the summary judgment stage is whether a reasonable jury could conclude that Plaintiffs' job was "substantially equal" to the job of fellow male employees, and yet she was payed less. *See Waters v. Turner, Wood & Smith Ins. Agency, Inc.*, 874 F.2d 797, 799 (11th Cir.1989).

 Plaintiffs' primary comparator is Lopez, a Hispanic male. Plaintiffs each earned $14,500 per year. Lopez made $28,000.00. Therefore, a substantial pay disparity exists. The issue is whether a reasonable jury could conclude that Plaintiffs' jobs and Lopez's job were "substantially equal."

Plaintiffs have produced evidence that they, along with Lopez, were promoted to supervisory roles when the former production manager resigned his employment with Defendant. According to Plaintiffs' testimony, the three of them were to have joint responsibility for production supervision on the first shift. Plaintiffs have also testified that the three of them performed the same job duties, although Plaintiffs contend that Lopez did not work as diligently as they did. Plaintiffs state that they, along with Lopez, supervised line workers and set-up mechanics. They attended daily production meetings to discuss the daily schedule and any problems that needed attention. They coordinated with manufacturing and components managers to ensure production.

Defendant contends that Lopez had more training as a set-up mechanic supervisor, and therefore, his job was not substantially equal to Plaintiffs. Plaintiffs contend that regardless of what Lopez's qualifications may have been, his duties were the same as theirs. They also point out that Plaintiff Williams had training as a set-up mechanic, and when necessary, cleaned and set up machines. Plaintiffs have also produced evidence that Lopez was not functioning as a mechanic, and his job did not require special technical skill or experience.

Plaintiffs do not have to prove that their jobs were identical to Lopez's. They have to show that a reasonable jury could conclude that the "skill, effort and responsibility required in the performance of the jobs are substantially equal." *Arrington v. Cobb County*, 139 F.3d 865, 876 (11th Cir. 1998). The Court finds that sufficient evidence exists from which a reasonable jury could conclude that Plaintiffs' jobs and Lopez's job were substantially equal. Therefore, Defendant's motion for summary judgment based upon Plaintiffs' alleged failure to make out a *prima facie* case is denied. The Court notes that Defendant has not pled the affirmative defense that the salary differential between Plaintiffs and Lopez was justified, and therefore, the

---

**8.** The Court does not interpret Plaintiffs' Complaint as asserting a Title VII discriminatory pay claim. The Court's interpretation of Plaintiffs' Complaint is that the only discriminatory pay claim being asserted is under The Equal Pay Act.

Court does not address that issue in this Order.[9]

### E. *Mitigation of Damages*

The Court finds that genuine issues of material fact exist as to whether Plaintiffs have properly mitigated their damages. Therefore, Defendant's motion for summary judgment on the issue of mitigation of damages is denied.

### *PLAINTIFFS' STATE LAW CLAIMS*

In addition to their federal law claims, Plaintiffs have asserted state law claims for intentional infliction of emotional distress and negligent supervision and retention. Plaintiffs have filed a motion to dismiss their intentional infliction of emotional distress claim. Defendant does not oppose the motion. Accordingly, Plaintiffs' intentional infliction of emotional distress claim is dismissed with prejudice.

 In their negligent supervision and retention claim, Plaintiffs contend that Defendant "should have known of Colquhoun's and Jordi Dalmau's reputation for discriminating against black employees and female employees, as well as retaliating against employees who complained about discrimination." Plaintiffs essentially attempt to create a state law negligence cause of action for discrimination in employment. Acceptance of Plaintiffs' creative legal theory would result in making virtually every employment discrimination claim actionable under state law negligence principles. If the State of Georgia desires or intends to provide its citizens with a state law remedy for employment discrimination, it has the means to do so through legislation enacted by the Georgia General Assembly. Absent a statutory or clear common law duty, this Court has no authority to abandon judicial restraint and create a new state law cause of action for employment discrimination.[10]

Based on the foregoing, the Court grants Defendant's summary judgment motion on Plaintiffs' state law negligent retention and supervision claim.

Insofar as Plaintiffs' state law punitive damages claim is based solely upon Plaintiffs' other substantive state law claims (which have now all been dismissed), summary judgment is also granted in favor of Defendant on Plaintiffs' state law punitive damages claim.

### *CONCLUSION*

In conclusion, the Court grants summary judgment in favor of Defendant on Plaintiffs' Title VII sex discrimination discharge claim and on Plaintiffs' state law claims for negligent retention and supervision. The Court dismisses with prejudice Plaintiffs' state law claim for the intentional infliction of emotional distress. Insofar

---

**9.** The Court recognizes that it has reached a curious result in this case by granting summary judgment to Defendant on Plaintiffs' *gender* based discriminatory discharge claim while denying summary judgment to Defendant on Plaintiffs' *gender* based EPA claim. The Court notes that this result can easily be explained based upon the differences in the burden of proof and essential elements between Title VII claims and EPA claims. *See Meeks v. Computer Associates Intern.*, 15 F.3d 1013 (11th Cir.1994) (explaining that Title VII requires evidence of "discriminatory intent," whereas the EPA simply requires proof of disparate pay between persons of the opposite sex with substantially equal jobs combined with the employer's failure to prove legitimate reasons for the disparity.)

**10.** *See Holston v. Sports Auth., Inc.*, 136 F.Supp.2d 1319, *adopted in pertinent part*, 136 F.Supp.2d 1319 (N.D.Ga.2000), *aff'd without op.*, 251 F.3d 164 (11th Cir.2001) (wherein the court explained that a claim for negligent hiring or retention based upon racial discrimination fails to state a claim under Georgia law, noting that negligence claims can arise only from common law duties, and there is no *common law* duty to prevent discrimination in employment.)

as Plaintiffs' state law punitive damages claim is based upon Plaintiffs' other state law claims, which have now been dismissed or disposed of by summary judgment, summary judgment is granted in favor of Defendant on Plaintiffs' state law punitive damages claim. Defendants' motion for summary judgment, except as otherwise granted herein above, is denied.