United States Court of Appeals,

Eleventh Circuit.

No. 95-6261.

Bobby Lee HARRIS, Plaintiff-Appellant,

v.

SHELBY COUNTY BOARD OF EDUCATION, Norma Rogers, individually and in her official capacity as Superintendent of Education for the Shelby County Board of Education, Susan Bagley, individually and in her official capacity as a member of the Shelby County Board of Education, Donna Morris, individually and in her official capacity as a member of the Shelby County Board of Education, etc., et al, Defendants-Appellees.

Nov. 20, 1996.

Appeal from the United States District Court for the Northern District of Alabama. (No. CV 93-B-1717-S), Sharon L. Blackburn, Judge.

Before ANDERSON and COX, Circuit Judges, and RONEY, Senior Circuit Judge.

ANDERSON, Circuit Judge:

On August 19, 1993, plaintiff-appellant Bobby Lee Harris filed suit against the defendants-appellees, alleging that the defendants-appellees discriminated against him by failing to select him for the principalship at Thompson High School because of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* as amended, and 42 U.S.C. § 1983, and in retaliation for his exercise of his constitutionally-protected right to freedom of speech, in violation of 42 U.S.C. § 1983. Harris sought declaratory and injunctive relief, including temporary and permanent injunctions requiring the defendants to promote him to the principalship at Thompson High School with back pay and other employment benefits to which he would have been entitled. On February 24, 1995, the district court entered summary

judgment on behalf of the defendants.  Harris filed this appeal.

*Facts*

In this summary judgment posture, we state the facts by making all reasonable inferences in favor of Harris.  Harris, a black male, has been employed by the defendant-appellee Shelby County Board of Education ("the Board") for eighteen years.  He served as an assistant principal at Thompson High School, located in Alabaster, Alabama, for the six years preceding this litigation. In May of 1992, the position of principal at Thompson High School became available, and the Board began soliciting applications to fill that position.  A number of candidates applied, including Harris.  Pursuant to standard Board procedure, all of these candidates were interviewed and ranked by a committee ("the Rogers committee") made up of defendant-appellee Dr. Norma Rogers, the Superintendent of the Shelby County school system, David Wayne Sumners, the Personnel Director, and Evan Major, the Director of Instructional Services for the school system.  The three candidates receiving the highest rankings from this selection committee were then interviewed by a lay committee of citizens.  The lay committee reported its conclusions to Rogers who, consistent with her responsibility in this regard, made a recommendation to the Board. The determinations of the lay committee are not binding on the superintendent, nor are the final numerical rankings.  The evidence presented makes clear that no one can be hired or promoted by the Board unless Rogers recommends it.

In support of his § 1983 free speech claim, Harris presented evidence of Rogers' knowledge and motivation with regard to his

exercise of his First Amendment rights. During Harris' interview with the Rogers committee, Rogers brought up an interview Harris had given to an Atlanta newspaper. On June 7, 1992, Harris was quoted in an *Atlanta Journal and Constitution* article concerning a rape and gang activity at Thompson High School. Harris stated, "Alabaster is a powder keg," and noted that he and other black leaders in the town had warned city leaders about the growing problem of gangs and race. Jim Yardley, *A Town Divided,* ATL. JOUR. AND CONST., June 7, 1992, at M1. In her deposition, Rogers stated that she asked Harris to tell her about the article. Rogers also testified that she told Harris that she received numerous phone calls from parents and students who were upset that their school was "looking so bad in the eyes of not only our state but other states." Rogers elaborated on her motivation in discussing this with Harris, stating:

> Well, I just felt that there was so much good that [Harris] could tell also. It's not that I didn't care for him sharing the negative, but tell the positive too.

Sumners testified that before the Rogers committee interviewed Harris, Rogers stated that she was "mad as hell" about the article and intended to speak with Harris about it at the interview, despite the fact that Sumners told Rogers that he thought that such questioning would be inappropriate. Sumners also recalled that at various times prior to the interview Rogers stated, with reference to Harris' role in the community, that Harris was "too controversial."

Harris also presented evidence to support his allegation that Rogers intentionally discriminated against him because of his race,

in violation of Title VII and § 1983.  Specifically, Harris directed the court to Sumners' deposition for insight into Rogers' intent and motivation.

> Harris' attorney:  Did you ever discuss about the placement of—specifically was there any discussion about the placement of a black at Thompson High School?
>
> Sumners:  Yes.
>
> Q: Between you and Dr. Rogers?
>
> A: Yes.
>
> Q: And what were her comments regarding that?
>
> A: At the time there were, whether real or perceived, I don't know, some racial problems at Thompson High School. There had been some talk about, quote, "gang problems," you know, depending on who you want to believe and those type things.  And you know, there was talk about Mr. Harris applying for the position and the statement was made that—
>
> .  .  .  .  .
>
> Yeah.  Like I said, you know, a statement was made that basically that under the circumstances we did not need to employ a black at Thompson High School.
>
> Q: Now was that made by Dr. Rogers?
>
> A: Yes, it was.
>
> .  .  .  .  .
>
> Q: Okay.  And of course that would eliminate Mr. Harris from consideration—
>
> .  .  .  .  .
>
> —for the position because he is black?
>
> A: Ah, it would seem so.  I mean I cannot not state for a fact that it would eliminate him, because I would not know Dr. Rogers' thinking, but it would appear that way.

In addition, Harris presented evidence that prior to the opening of the principal position, Rogers transferred him temporarily from his position as assistant principal at Thompson

High School to a position as the At Risk/Attendance Supervisor, a lower-paying job in the central office of the Shelby County school system. Sumners testified that Rogers was aware at the time that Mr. Simmons, the principal at Thompson High School, was preparing to retire. There was additional evidence from which the jury could infer that Rogers was attempting to take Harris out of line for the principalship. Also, Sumners testified that, upon her arrival as superintendent for Shelby County, Rogers instructed him to discontinue his statewide recruiting of black applicants for positions within the school system, a task that he, as Personnel Director, had undertaken at the direction of Rogers' predecessor.

The Rogers committee ranked Harris seventh, and accordingly he was not granted an interview with the lay committee. Jim Elliott, a white male, was ranked highest by the Rogers committee, and Rogers eventually recommended to the Board that Elliott be hired as principal at Thompson High School. The district court noted that while Elliott has more than a decade of experience as a high school principal, Harris has never served as a principal. Harris was the assistant principal at Thompson High School for six years prior to this litigation, and thus had more experience at that particular institution.[1]

On the defendants' motion for summary judgment, the district court found that Harris presented no direct evidence of discrimination. With regard to Harris' presentation of circumstantial evidence of discrimination, the court held that

---

[1]Additional facts will be discussed in the relevant parts of our analysis.

although Harris established a prima facie case of discrimination, he failed to offer sufficient evidence that the legitimate, non-discriminatory reason for the Board's hiring of Elliott was merely a pretext for discrimination. The district court also held that Harris failed to offer sufficient evidence that his exercise of his right to freedom of speech was a motivating factor in Rogers' failure to recommend him for the principalship at Thompson High School. The court then granted summary judgment to the defendants.

### Standard of review

Our review of a district court's grant of summary judgment is plenary; we must determine whether there are genuine issues of material fact, and whether the moving party is entitled to judgment as a matter of law. *N.A.A.C.P. v. Hunt,* 891 F.2d 1555, 1559 (11th Cir.1990). We view the facts in the light most favorable to the non-movant. *Id.* at 1559-60. Summary judgment is appropriate when the evidence favoring a non-moving party is insufficient to support a jury verdict on its behalf. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

### Race Discrimination Claims

We evaluate Title VII and 42 U.S.C. § 1983 race discrimination claims supported by circumstantial evidence using the framework set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Busby v. City of Orlando,* 931 F.2d 764, 777

(11th Cir.1991).[2]   First, the plaintiff has the burden of establishing a prima facie case of discrimination.  *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824.  Second, assuming that the plaintiff has met this initial burden, the defendant has the burden to produce a "legitimate, nondiscriminatory reason" for the allegedly discriminatory employment action.  *Id.*  Third, if the defendant satisfies this burden of production, the plaintiff has an opportunity to prove by a preponderance of the evidence that the reasons offered by the defendant are a mere pretext for discrimination, and to persuade the fact-finder that the defendant intentionally discriminated against the plaintiff.  *Id.* at 804, 93 S.Ct. at 1824.  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

As noted above, the district court found that Harris established a prima facie case of discrimination, and that the defendants met their burden of production by articulating a legitimate, nondiscriminatory reason for their failure to make

------

[2]Harris argues on appeal that he has presented, through the testimony of Sumners, both direct and circumstantial evidence of discriminatory intent behind Rogers' decisions with regard to Harris' application for the principalship at Thompson High School.  Our review of this testimony leads us to conclude that while Harris has indeed offered circumstantial evidence of such intent, given that Rogers' statements could by inference have more than one possible meaning, Harris has not presented direct evidence of discrimination.  *See Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1528, n. 6 (11th Cir.1987) ("Direct evidence is "[e]vidence, which if believed, proves the existence of fact in issue without inference or presumption.' ") (quoting Black's Law Dictionary 413 (5th ed. 1979)).

Harris the principal at Thompson High School.  The district court concluded, however, that Harris failed to offer sufficient evidence to rebut the defendants' legitimate, non-discriminatory explanation for their actions.

After a Title VII plaintiff makes out a prima facie case, and the defendant produces a legitimate, nondiscriminatory explanation for its actions, the *McDonnell-Burdine* presumption drops from the case.  *U.S. Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983).  At that point, the inquiry is "[whether] the defendant intentionally discriminated against the plaintiff."  *Id.* (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093).

> [T]he plaintiff must, by either direct or circumstantial evidence, demonstrate by a preponderance of the evidence that the employer had a discriminatory intent.... Moreover, if the defendant's proffered reasons are rejected, the trier of fact may infer the ultimate fact of intentional discrimination.

*Batey v. Stone,* 24 F.3d 1330, 1334 (11th Cir.1994).  The focus of the case after the defendant has met the burden of production is on the defendant's subjective intent and the motivation behind the defendant's adverse employment actions directed at the plaintiff.

It is clear to us on this record that there is conflicting evidence regarding Rogers' intent during the process of not hiring Harris as principal at Thompson High School.[3]  In light of the

_____

[3]In the Title VII context, the dispute revolves around Rogers' intent.  She was the decisionmaker responsible for making employment recommendations to the Board.  The record establishes that the Board can act on a matter like this only upon the superintendent's recommendation.  Harris' Title VII claim is viable only as to the Board, and Rogers' actions are attributable to the Board under Title VII.  *Busby,* 931 F.2d at 772 (because individual capacity suits are unavailable under Title VII, plaintiffs must sue the employer, but may do so by naming

evidence discussed below, we disagree with the district court's conclusion that Harris has failed to offer sufficient evidence of discriminatory intent on the part of Rogers to create a genuine issue of material fact.

Sumners' testimony provides support for Harris' assertion that Rogers intentionally discriminated against him during the process of selecting a new principal for Thompson High School, a process Rogers substantially controlled. Both Sumners and Major, the other two members of the Rogers committee, remained employed at her discretion. There was strong evidence that Rogers' recommendation was crucial, and that it was rare for the Board to not follow it. Sumners stated in his deposition that, when she began serving as superintendent, Rogers ordered him to cease efforts to recruit black candidates for positions with the Shelby County school system. There was also evidence that Rogers transferred Harris out of Thompson High School in an attempt to reduce his chances of becoming principal there. The strongest evidence of Rogers' racial motivation can be found in Rogers' statement, as reported by Sumners and quoted *verbatim* above, to the effect that "under the circumstances we did not need to employ a black at Thompson High School." Although this statement may be open to more than one interpretation, a fact-finder could reasonably infer that Rogers

supervisory employees as agents of the employer). With regard to Harris' § 1983 claim, Rogers' actions are not attributable to the Board. *Id.* at 776 (respondeat superior unavailable under § 1983). Moreover, there is little or no evidence of racial animus on the part of individual Board members themselves. We need not so decide, however, because as discussed below, both Rogers in her individual capacity and the Board are relieved of liability under § 1983.

meant that Harris would not be considered for the position because he is black.

We conclude that there remain genuine issues of material fact with respect to Rogers' intent. *Cf. Pearson v. Macon-Bibb County Hosp. Authority,* 952 F.2d 1274, 1280 (11th Cir.1992) (remanding Title VII case despite defendants' well-supported explanation for its adverse employment decision because of conflicting evidence in the record). It is the responsibility of the ultimate finder of fact to weigh the evidence and make the appropriate credibility determinations. *See Walls v. Button Gwinnett Bancorp, Inc.,* 1 F.3d 1198, 1200 (11th Cir.1993). On summary judgment we must view the facts in the light most favorable to the non-movant, Harris. *Hunt,* 891 F.2d 1555, 1559-60. So doing, we hold that summary judgment on the issue of Rogers' racial motivation is inappropriate.

The defendants can nevertheless prevail in large measure if they can prove that because Elliott is a much more qualified principal candidate than Harris, Rogers would have made the same hiring decision even in the absence of any discriminatory intent. Defendants in Title VII cases may prove as an affirmative defense that they would have reached the same employment decision even in the absence of bias. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 246, 109 S.Ct. 1775, 1788, 104 L.Ed.2d 268 (1989); *see also Turnes v. AmSouth Bank, NA,* 36 F.3d 1057, 1062 (11th Cir.1994). Because of Congress' amendment of Title VII through the Civil Rights Act of 1991, this defense, if proven, effectuates only a limitation on

liability, not a complete avoidance of it. [4] Congress added to Title VII the following language:

> [A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.

42 U.S.C. § 2000e-2(m) (1995). Under this section, the plaintiff in a Title VII action prevails whenever he or she proves that one of the delineated characteristics was a "motivating factor" behind a particular employment decision, even if there were other, even legitimate, factors motivating that decision as well. *See Preston v. Com. of Va. ex rel. New River Coll.,* 31 F.3d 203, 207 (4th Cir.1994); *Pilditch v. Board of Educ. of the City of Chicago,* 3 F.3d 1113, 1118 n. 2 (7th Cir.1993), *cert. denied,* 510 U.S. 1116, 114 S.Ct. 1065, 127 L.Ed.2d 385 (1994); *Hannon v. Chater,* 887 F.Supp. 1303, 1314 (N.D.Cal.1995).[5] Nonetheless, under Title VII as amended, a defendant can limit its liability by proving that it would have made the same employment decision even without considering the improper factor.

On a claim in which an individual proves a violation under

---

[4]In this regard, the 1991 Act legislatively overruled that part of the plurality's holding in *Price Waterhouse* which allowed defendants to completely avoid liability upon proving by a preponderance of the evidence that they would have taken the same action in the absence of discriminatory intent. *See O'Day v. McDonnell Douglas Helicopter Co.,* 79 F.3d 756, 760 (9th Cir.1996); *Robinson v. Southeastern Pennsylvania Transp. Authority,* 982 F.2d 892, 899 (3rd Cir.1993).

[5]However, with regard to employment discrimination claims brought pursuant to 42 U.S.C. § 1983, this affirmative defense effects a total avoidance of liability, such that if a defendant proves that it would have taken the same action in the absence of discriminatory intent, the plaintiff is not entitled to any relief. *See Turnes v. AmSouth Bank, NA,* 36 F.3d 1057, 1062 (11th Cir.1994).

section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—

(i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title; and

(ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

42 U.S.C. § 2000e-5(g)(2)(B) (1995).

From the facts presented in this summary judgment record, it is clear that Elliott's qualifications are sufficiently superior to those of Harris that no juror could conclude that Rogers would not have made the same decision absent discriminatory intent. At the time he was considered by the Rogers committee for the principalship at Thompson High School, Elliott had nine years of experience as a principal. He held the AA School Administration certification from the State of Alabama. By contrast, Harris had no experience as a principal, and in 1992 was only a candidate for the AA certification. Further, Elliott was named the Outstanding Secondary School Principal in Alabama in 1992, and was elected president of the Alabama Association of Secondary School Principals the same year. In the face of evidence that Elliott not only had substantial experience as a principal as compared to Harris' total lack of such experience, but also that Elliott's performance as a principal was extremely well-regarded statewide, Harris has presented no evidence to prove that Rogers would have chosen him instead of Elliott in the absence of bias.

Also significant are Harris' expressions of uncertainty

regarding his readiness to assume a high school principalship, made to two members of the Shelby County Board of Education. In his deposition, Board member Leland K. Doebler testified that during conversations with Harris he learned that Harris was concerned that he might not be prepared to assume the principalship at Thompson High School, and that Harris was more interested in serving as the principal of Thompson Middle School. Doebler stated that he made Rogers aware of these conversations prior to Elliott's selection as principal. Board member Donna Morris testified that at the time the application process opened for the principalship at Thompson High School, Harris told her that he was not really interested in the position, but was primarily concerned with insuring that no one of the same rank as he in the school system was selected over him.

Based on the overwhelming evidence presented to the court below, the defendants are entitled to summary judgment with regard to their affirmative defense, namely, that Rogers would have made the same recommendation to the Board even in the absence of discriminatory intent. While this is a complete defense to Harris' § 1983 employment discrimination claim, as noted above, Harris may still receive other relief under 42 U.S.C. § 2000e-5(g)(2)(B), assuming that he proves to the fact-finder on remand that discrimination based on his race was one motivating factor behind Rogers' decision not to recommend him for the principalship at Thompson High School. *See* 42 U.S.C. § 2000e-2(m); *Fuller v. Phipps,* 67 F.3d 1137, 1142 (4th Cir.1995); *Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1181 (2nd Cir.), *cert. denied,* 506 U.S. 826, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). We therefore remand to

the district court for further proceedings on that issue.  As noted above, Harris' Title VII claim is viable only as to the Board itself.  Thus, the remand affects only that defendant.

*Free Speech Claim*

Harris argues that he was also denied the principalship at Thompson High School because he availed himself of his constitutionally-protected right to freedom of speech.  A state cannot retaliate against a public employee for speech protected under the First Amendment.  *Bryson v. City of Waycross,* 888 F.2d 1562, 1565 (11th Cir.1989).  However, the public employee's right to free speech is not absolute.  *Id.* (citing *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987)).  This circuit utilizes a four-part test to determine if retaliation on the basis of protected speech has occurred.  First, the court must analyze "whether the employee's speech may be "fairly characterized as constituting speech on a matter of public concern.' " *Id.* (quoting *Rankin,* 483 U.S. at 384, 107 S.Ct. at 2897).  Speech of public concern relates to political, social or other issues of interest to the community, as opposed to issues solely of personal interest. *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983).  The court continues by "weighing the employee's first amendment interests against "the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Bryson,* 888 F.2d at 1565 (quoting *Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734-35, 20 L.Ed.2d 811 (1968)).  Should the employee prevail on this balancing test, "the fact finder determines whether

the employee's speech played a "substantial part' in the government's decision to demote or discharge the employee." *Id.* (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). Finally, if the employee shows that the speech was a substantial motivating factor in the state's employment decision, "the state must prove by a preponderance of the evidence that "it would have reached the same decision ... even in the absence of the protected conduct.' " *Id.* at 1566 (quoting *Mt. Healthy,* 429 U.S. at 286, 97 S.Ct. at 575).

As set forth above, the evidence in this case warrants the entry of judgment for the defendants on the question of whether Rogers would have made the same recommendation even in the absence of discriminatory intent. The same is true with Harris' free speech claim. Assuming *arguendo* that Harris prevails on the first three steps of the test set forth in *Bryson,* the defendants nonetheless have presented overwhelming evidence that Rogers would have taken the same action even in the absence of Harris' speech. The evidence is insufficient to support a jury verdict on Harris' behalf with regard to his § 1983 free speech claim.

## *Conclusion*

Given the factual dispute that awaits resolution with regard to whether discrimination based on race was a motivating factor behind Rogers' recommendation, we hold that summary judgment on the Title VII claim was improperly granted to the defendant Board on this issue. However, the defendants have established by undisputed evidence their affirmative defense that Rogers would have made the same decision notwithstanding any animus she harbored based on

either Harris' race or protected speech. Accordingly, the defendants are entitled to summary judgment on Harris § 1983 claims based on race discrimination and free speech. However, we must remand for further proceedings with respect to the possibility of limited relief against the defendant Board only as set out in 42 U.S.C. § 2000e-5(g)(2)(B).

AFFIRMED in part, VACATED in part and REMANDED.