[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 5, 2008
THOMAS K. KAHN
CLERK

————————————————

No. 07-12606

————————————————

D. C. Docket No. 9:06-CV-80961-DMM

VINCENT C. KNIGHT,

Plaintiff-Appellant,

versus

STATE OF FLORIDA DEPARTMENT OF
TRANSPORTATION,
a.k.a. DOT,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

**(September 5, 2008)**

Before BLACK and MARCUS, Circuit Judges, and EVANS,* District Judge.

PER CURIAM:

---

* Honorable Orinda Evans, United States District Judge for the Northern District of Georgia, sitting by designation.

Vincent C. Knight appeals from the district court's grant of summary judgment in favor of the Florida Department of Transportation (FDOT) on his allegations of retaliation under Title VII and the Florida Civil Rights Act (FCRA).[1]  Knight alleged he was terminated because he provided damaging deposition testimony in a sexual harassment suit filed against FDOT.  FDOT in turn said it had a legitimate, non-discriminatory reason for terminating Knight: Knight himself was sexually harassing a coworker.  The district court granted summary judgment in favor of FDOT, finding Knight had failed to establish a prima facie case of retaliation and, alternatively, had failed to create a genuine issue of material fact that FDOT's proffered reason for his termination was pretextual.  We affirm.

## I. BACKGROUND

Sargent Knight was an 18-year veteran of FDOT's Motor Carrier Compliance Office (MCCO).  In May 2005, Knight provided deposition testimony in a discrimination case brought by a coworker, Cindy Miller, against FDOT.  Knight describes his testimony against FDOT as "devastating";  in particular, he testified in the Miller deposition that an employee used derogatory terms when

---

[1] Because the FCRA is modeled after Title VII and Florida courts look to Title VII case law when interpreting the FCRA, we address Knight's claims identically.  *See Jones v. United Space Alliance, LLC*, 494 F.3d 1306, 1310 (11th Cir. 2007).

referencing Miller in both his presence and the presence of his direct supervisor, Lt. Terry Gartner. This directly contradicted Gartner's testimony, because Gartner testified he heard no such thing.

A month or so after Knight's testimony, Gartner informed Knight that a coworker, Shannon Evert, had accused Knight of sexual harassment. According to Evert's complaint, Knight and Evert had a consensual sexual relationship in 2004. Knight continued to pursue the relationship after it ended, until Evert asked him in February 2005 to leave her alone. According to Evert, Knight backed off until June 2005, when his unwelcomed advances continued. Knight admitted he and Evert had a consensual relationship, but he insisted the relationship was at all times consensual and never transformed into sexual harassment.

Evert filed her complaint with Gartner. Gartner informed Knight he was accused of sexual harassment and told him to "[h]ave a nice day." Gartner forwarded the complaint form, on which he wrote, "Knight is sexually harassing Evert."

The Equal Employment Opportunity Office (EOO), which is within FDOT but outside the MCCO, investigated the complaint. Michael Klump, the EOO investigator who investigated the Miller matter, investigated Evert's allegations. Klump interviewed Evert, Knight, Gartner, and a friend of Evert. In addition,

Evert provided pages from Knight's journal in which he referred to her romantically. Klump found Evert's allegations credible, and found Knight's statements–that the relationship was consensual and Evert was sending him mixed messages–incredible.

Col. Graham Fountain, the director of MCCO, received the conclusions of Klump's investigation. Fountain decided to terminate Knight based on the failure to report his consensual relationship with Evert (a violation of MCCO's rules) and his sexual harassment of Evert. Fountain admitted he was aware of Knight's deposition testimony in the Miller case and thought Knight's testimony had hurt FDOT's case.

Knight sued under Title VII and Florida law, alleging his termination was in retaliation for his testimony in the Miller case. FDOT filed a motion for summary judgment, which the district court granted. The district court found Knight had failed to make out a prima facie case of retaliation and, in any event, had failed to come forward with a genuine issue of material fact as to whether FDOT's proffered reason for his termination was pretextual. Knight appeals.

## II. DISCUSSION

We review the grant of summary judgment de novo. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). Summary judgment is

appropriate when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact. *Id.*

On appeal, Knight argues the district court erred in finding he failed to present a prima facie case of retaliation and failed to demonstrate the proffered reason for his termination was pretextual. To establish a prima facie case of retaliation under Title VII, the plaintiff must show (1) a protected activity; (2) an adverse action taken by the employer; and (3) a causal connection. *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999). If the employer responds by providing a legitimate, non-discriminatory reason for the adverse action, then the burden remains on the plaintiff to rebut the proffered reason and demonstrate it is mere pretext. *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir 1998).

We assume, without deciding, that Knight has successfully set forth the prima facie case. Having thoroughly reviewed the record evidence and the arguments in this case, however, we conclude Knight has failed to establish a genuine issue of material fact that FDOT's stated reason for his termination was pretextual.

Pretext can be shown either by directly persuading a court that discriminatory motive more likely motivated the employer or by indirectly demonstrating the provided reason was unworthy of credence. *Sweat v. Miller*

*Brewing Co.*, 708 F.2d 655, 656 (11th Cir. 1983). *See also Harris v. Shelby County Bd. Of Educ.*, 99 F.3d 1078, 1083 (11th Cir. 1996) ("The focus of the case after the defendant has met the burden of production is on the defendant's subjective intent and the motivation behind the defendant's adverse employment actions directed at the plaintiff."). A plaintiff must do more than criticize the business judgment of his employer, and he cannot simply quarrel with the wisdom of the decision. *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000).

Moreover, the inquiry is not whether Knight actually sexually harassed Evert. Rather, the inquiry is whether the employer had a good-faith basis for its belief and the belief actually motivated its decision. *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). In reaching an employment decision, an employer is free to weigh the credibility of different witnesses: "When the resulting employer's investigation . . . produces contradictory accounts of significant historical events, the employer can lawfully make a choice between the conflicting versions . . . , as long as the choice is an honest choice." *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000).

In this case, Fountain was the decisionmaker who terminated Knight. After Evert complained, the complaint was referred to the investigators at the EOO, an office independent of the MCCO. They investigated the case and determined

6

Evert's version was credible, whereas Knight's version was not. Fountain, reviewing the report upholding Evert's claims of sexual harassment, terminated Knight. Knight has offered no evidence either that (1) the determination by the EOO investigators that Evert was credible was not made in good faith, or (2) Fountain's decision to terminate Knight based on the sexual harassment was not his actual reason for the decision. He therefore cannot survive summary judgment.

Knight presents several facts he believes are sufficient to get him past summary judgment. None of them actually address the questions relevant to the inquiry. First, Knight argues Gartner's "determinative language" and "fervor" to pursue Evert's complaint are evidence that retaliatory animus actually fueled the decision to terminate Knight. But Gartner was not a decisionmaker; he was not involved in either the investigation of the complaint or Fountain's decision to terminate Knight. Therefore, the facts Knight presents are not sufficient to survive summary judgment.

Second, Knight states he has evidence that Evert's account of their relationship is not credible. He says the evidence demonstrates Evert contacted Knight several times and sent him mixed messages, contradicting the story she told the EOO investigators. But this is the sort of inquiry–whether the complaint

7

was genuine–expressly disclaimed by our precedent. *See Elrod*, 939 F.2d at 1470. The question is whether the investigation and decision were conducted in good faith, not whether Evert is a liar.

Third, Knight argues the EOO's investigation of Evert's complaint was handled differently from other investigations. No doubt evidence an investigation was perfunctory or capricious in comparison to other investigations would indeed be evidence the investigation was not conducted in good faith. In this case, however, Knight only states the investigation of Evert's complaint was shorter than the Miller investigation and involved fewer witnesses. He has no evidence suggesting his investigation should have been longer or more thorough. The mere fact that different investigations require different treatment is not, absent further basis for comparison, sufficient to raise a genuine issue of material fact. Without providing further detail on how his situation should have been treated similarly to the Miller investigation, Knight cannot survive summary judgment on this basis.

Finally, Knight points out that Fountain–the ultimate decisionmaker in this case–knew about Knight's protected activity. Although mere knowledge of protected activity by a decisionmaker can be sufficient to survive the prima facie case, *see Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997), knowledge alone is not necessarily sufficient once the analysis moves to the

pretext stage. Therefore, Fountain's knowledge that Knight engaged in protected activity is not evidence sufficient on its own to show the actual motivation for the termination was retaliatory.

## III. CONCLUSION

In sum, FDOT presented with a legitimate, non-discriminatory reason for terminating Knight (his harassment of Evert), and Knight has failed to come forward with evidence creating a genuine issue of material fact as to whether the termination was actually motivated by another reason or whether the investigation was not conducted in good faith. The district court's judgment is AFFIRMED.